AO 91 (Rev. 11/11) Criminal Complaint (Rev. by USAO on 3/12/20)   ☐ Original   ☐ Duplicate Original

# UNITED STATES DISTRICT COURT

for the

Central District of California

**LODGED**
CLERK, U.S. DISTRICT COURT
2/06/2025
CENTRAL DISTRICT OF CALIFORNIA
BY: ASI   DEPTUTY



FILED
CLERK, U.S. DISTRICT COURT
02/06/2025
CENTRAL DISTRICT OF CALIFORNIA
BY: KL   DEPUTY

United States of America

v.

JESUS OMAR LOPEZ QUINTERO,

JUAN ALONSO HERNANDEZ ENRIQUE,

Defendants

Case No. 2:25-mj-00523-DUTY

## CRIMINAL COMPLAINT BY TELEPHONE
## OR OTHER RELIABLE ELECTRONIC MEANS

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date of January 28, 2025 in the county of Los Angeles in the Central District of California, the defendants violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 659 | Possession or Receipt of Goods Stolen from Interstate Shipment |
| 18 U.S.C. § 549 | Removing Goods from Customs Custody/Breaking seals |
| 8 U.S.C. § 1326 | Illegal Reentry into the United States Following Deportation or Removal |

This criminal complaint is based on these facts:

*Please see attached affidavit.*

☒ Continued on the attached sheet.

/s/
Complainant's signature

Mitchell A Gangwish, Special Agent
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone.

Date: February 6, 2025  10:11 a.m.

*Alicia G. Rosenberg*
Judge's signature

City and state: Los Angeles, California

Hon. Alicia G. Rosenberg, U.S. Magistrate Judge
*Printed name and title*

AUSA: Sophia Carrillo (x0546)

**AFFIDAVIT**

I, Mitchell Gangwish, being duly sworn, declare and state as follows:

## I.   INTRODUCTION

1. I am a Special Agent ("SA") with the Department of Homeland Security ("DHS"), Immigration and Cu]stoms Enforcement ("ICE"), Homeland Security Investigations ("HSI"), and have been so employed since May of 2022. I attended the HSI Criminal Investigator Training Program at the Federal Law Enforcement Training Center ("FLETC") in Glynco, Georgia. At FLETC, I received training in conducting criminal investigations into narcotics smuggling, interdiction, and distribution of controlled substances.

2. I am currently assigned to the Los Angeles Border Enforcement Security Taskforce ("LA BEST") in Los Angeles, California, and have been so assigned since May 2023. LA BEST is a multiagency task force aimed at identifying, targeting, and eliminating vulnerabilities to the security of the United States related to the Los Angeles/Long Beach seaport complex, as well as the surrounding transportation and maritime corridors. My responsibilities include the investigation of violations of federal criminal laws, including crimes involving cargo theft, money laundering, narcotics trafficking, smuggling, fraud, and immigration violations. I was previously employed with ICE Enforcement and Removal Operations as a Deportation Officer from May 2016 until May 2022. I served in the United States Marine Corps from September 2008 until September 2013.

## II. PURPOSE OF AFFIDAVIT

3. This affidavit is made in support of a criminal complaint against Jesus Omar Lopez Quintero, also known as ("aka") "Jose Roberto Medina Lugo" ("QUINTERO") and Juan Alonso Hernandez Enrique, aka "Eduardo Garcia Vega", aka "Juan Alonso Hernandez Enriquez" ("ENRIQUE") for violation of Title 18, United States Code, Section 659: Possession or Receipt of Goods Stolen from Interstate Shipment; Title 18, United States Code, Section 549: Removing Goods From Customs Custody/Breaking seals; and Title 8, United States Code, Sections 1326(a): Illegal Reentry into the United States Following Deportation or Removal.

4. Because this affidavit is being submitted for the limited purpose of securing the requested criminal complaint, I have not attempted to include each and every fact that may be known to me and other law enforcement personnel concerning this investigation. I have set forth only those facts that I believe are necessary to establish probable cause for the requested criminal complaint. Where statements of others are set forth in this affidavit, they are set forth in substance and in part only, unless otherwise indicated. The facts set forth in this affidavit are based upon information obtained from other law enforcement personnel, reports, and database queries, and, where noted, my personal knowledge and training and experience.

## III. BACKGROUND

5. Based on my training and experience and conversations with other law enforcement officers I know the following to be true. Over the past fifteen years, several Transnational

2

Criminal Theft Organizations have been burglarizing BNSF Railway and Union Pacific trains throughout the Southwest of the United States to include California. These organizations consist primarily of Mexican citizens from the Mexican State of Sinaloa who operate out of California and Arizona, with extensive connections throughout California, Arizona, and New Mexico. The train burglaries have increased in frequency over the past two years.

6. The suspects usually scout high value containers on the BNSF railway on Eastbound trains throughout California and Arizona. Once the organization targets a particular train of interest, they typically find a location for several train burglars to get on the train. Once on the train, the burglars open container doors while the train is moving and target merchandise to steal such as electronics, tools, and footwear. The burglars often target containers with visible high-security locks and use reciprocating saws, bolt-cutters, or similar tools to defeat the locking mechanisms. Once the burglars target a specific container that has desirable merchandise, the burglars on the train communicate with follow vehicles utilizing cellular devices, and those follow vehicles surveil the train until it stops or the burglars cause the train to stop to unload the freight. The suspects often cut the train braking system air hose, which causes the train to go into an emergency stop , which is a sudden and dramatic application of all the brakes on the train. By cutting an air hose, the burglars can control when and where the train is stopped to unload the cargo they target

to burglarize. This act is very dangerous and can cause a train to derail, which could ultimately cause serious injury or death to BNSF employees or citizens. The suspects have also sabotaged the train signal system by cutting the locks off signal boxes and then by cutting the control wires inside. This is also a dangerous act that creates dark areas on the rail network, requiring non-traditional train dispatching functions and extensive repairs. High-value trains travel at speeds up to 70 MPH on multiple tracks in both east and west directions. The train crews and train dispatchers rely on the signals for safe transportation.

7. Once the burglars unload the merchandise from the container that is on the train, the burglars often hide the product in fields or brush adjacent to the BNSF tracks to conceal it until it can be picked up later. The location of the stolen merchandise is then shared by the train burglars with the use of cellular devices to the surveillance crew who are following the train. The organization will then send box trucks to pick up the stolen merchandise if law enforcement is not detected. Often, the box trucks used by the organization were found to have been stolen with their Vehicle Identification Number swapped. Once the stolen merchandise has been picked up, it is usually transported to locations within California where it is sold or fenced to wholesale online retailers such as third-party Amazon and eBay resellers.

## IV.  STATEMENT OF PROBABLE CAUSE

8.  I learned the following information from San Bernardino County Sheriff's Department Officer Ashton Godwin:

a. On January 28, 2025, at approximately 7:00 p.m., Officer Godwin was assigned to uniformed patrol in a marked San Bernardino County Sheriff's patrol car in the unincorporated areas of Barstow, California.

b. At approximately 9:15 p.m., Officer Godwin received a call of a suspicious vehicle near the train tracks located at the intersection of National Trails Highway and Hinckley Road in Barstow, California.

c. At approximately 9:20 p.m. Officer Godwin observed BNSF train SLBTCL0128A (the "TARGETED TRAIN") stopped near National Trails Highway and Hinckley Road in Barstow, California. Officer Godwin observed a shipping container later identified as MRKU3995427 (the "TARGETED CONTAINER") had its right door open, while no other container doors appeared to be open. At approximately 9:24 p.m. Officer Godwin observed a white cargo van bearing California license plate 5Y45901 (the "SUBJECT VEHICLE") driving east on National Trail Highway, approximately 500 feet away from the TARGETED CONTAINER.

d.  Officer Godwin initiated a vehicle stop of the SUBJECT VEHICLE for a violation of California Vehicle Code 24601, because he could not make out the license plate due to a missing license plate light and what appeared to be a reflective coating on top of the license plate. In my

5

training and experience in rail thefts, thieves manipulate their license plate to avoid detection, and in particular, to avoid detection by license plate cameras. Officer Godwin activated his sirens and lights. The SUBJECT VEHICLE was slow to yield, and continued for approximately a minute and thirty seconds. At one point, the SUBJECT VEHICLE drove in opposing traffic. After the SUBJECT VEHICLE yielded on the shoulder, QUINTERO exited the driver side door and ENRIQUE exited the passenger's side door and both men took flight.

     e.  Both QUINTERO and ENRIQUE were observed running into the desert south of National Trails Highway. Officer Godwin pursued both subjects on foot. Officer Godwin observed QUINTERO fall while running, and QUINTERO was taken into state custody without incident. At approximately 9:43 p.m., a San Bernardino County Sheriff's Helicopter Unit located ENRIQUE lying in bushes approximately 100 yards south of National Trails Highway. ENRIQUE was located and taken into state custody without incident.

     f. From my conversations with Officer Gilmore, both QUINTERO and ENRIQUE gave false names, but their identities were later confirmed through the use of fingerprints.

     g. Later that evening, Officer Goodwin and BNSF Police Officer Darren Gilmore returned to the SUBJECT VEHICLE to conduct an inventory search. At the SUBJECT

VEHICLE they found approximately 71 cases, each containing four Milwaukee brand Sawz-All's bearing the model number 2821-20, which according to a commercial invoice provided by Milwaukee Tools are valued at a wholesale price of $57.42. Milwaukee Tools estimated the wholesale amount of tools recovered from the SUBJECT VEHICLE was $16,307.28.

9. I learned the following information from BNSF Police Officer Darren Gilmore:

    h. On January 28, 2025, Officer Gilmore returned to the train tracks near the TARGETED CONTAINER and observed approximately 13 cases of Milwaukee brand impact wrenches at the side of the tracks near the TARGETED CONTAINER. Each case contained approximately four impact wrenches, which according to a commercial invoice provided by Milwaukee Tools are valued at $39.43 each. Officer Gilmore also observed 25 cases of Milwaukee Sawz-All's bearing the model number 2821-20. Each case contained four Sawz-All's, which according to Milwaukee Tools are valued at $57.42 each. The estimated amount of product recovered near the train track according to Milwaukee Tools is $7,792.36.

    i. Officer Gilmore stated that on January 28, 2025, when the theft occurred, the TARGETED TRAIN had stopped on the Needles Subdivision at MP 745, near the major cross streets of East Main Street and Cal Avenue for a routine stop awaiting approval to proceed to its intended route. This area is known to BNSF Railway as East Barstow and is in the City of Barstow, California and within the County

7

of San Bernardino.

    j. Officer Gilmore also stated each train that travels on the BNSF rail system is given unique identifiers. The identifiers are based on the type of train, the point of origin, the destination, the priority, and the day the train was built. For the TARGETED TRAIN, the "S" symbolizes the train is a stack train, meaning the train is loaded with intermodal containers, often two containers high. The "LBT" is the point of origin, which is Long Beach, California, from the Port of Long Beach. "CLO" is the destination of the train, which is Clovis, New Mexico. Per the waybill data, the TARGETED CONTAINER was scheduled to be transferred to a different train which had a destination of Memphis, Tennessee. The "1" represents the priority, one being the lowest and 9 being the highest. The "28" identifies the train as being built on the 28th day of the month.

  10.  I learned the following information from the Director of Asset Protection for Milwaukee Tools Jeremy Scott:

    k. According to the Commercial Invoice provided by Milwaukee Tools, the TARGETED CONTAINER was traveling under SEA Waybill number MAEU720577612. The Commercial Packing List for the TARGETED CONTAINER shows the TARGETED CONTAINER contained approximately 2,000 Milwaukee Sawz-All's bearing the model number 2821-20 and approximately 336 Milwaukee impact wrenches bearing model number 9070-20. Furthermore, the TARGETED CONTAINER was sealed with a

8

high-security seal bearing the number CN0268090.

11. On February 4, 2025, I went to the San Bernardino County West Valley Detention Center located in Rancho Cucamonga, California. ENRIQUE and QUINTERO were set to be released from state custody on February 4, 2025. I encountered ENRIQUE and QUINTERO at the West County Jail on February 4, 2025 and made a probable cause arrest for these federal charges.

12. QUINTERO confirmed his true and correct name was Jesus Omar Lopez Quintero and his date of birth was November 27, 1990. I conducted preliminary records checks of ICE databases which revealed QUINTERO was a Mexican National who was previously deported from the United States.

13. I conducted Department of Homeland Security record checks and reviewed court documents provided by the United States District Court for the District of Arizona which revealed that QUINTERO had been convicted on April 17, 2013, for violation of Title 8, United States Code, Section 1325: Illegal Entry. On April 14, 2022, QUINTERO was convicted of Title 8, United States Code, Section 1326: Illegal Reentry into the United States Following Deportation or Removal. On July 19, 2023, QUINTERO was convicted of violation of Title 8, United States Code, Section 1326: Illegal Reentry into the United States Following Deportation or Removal.

14. On or about February 4, 2025, I reviewed removal documents from Alien File No. A205-917-521 ("A-File"), which was assigned and maintained for QUINTERO. An "A-File" is a file in which all immigration records are maintained for aliens admitted

to or found in the United States. The A-File usually contains photographs, fingerprints, court records of conviction, and all records relating to deportation or other actions by DHS (or INS) with respect to the subject alien for whom the A-File is maintained.

    15. I reviewed documents contained within QUINTERO's A-File. Based on my review of the individual physically depicted in that A-File, and my observations of QUINTERO in person on February 4, 2025, at the San Bernardino County West Valley Jail, I believe the documents in the A-File correspond to QUINTERO. Based on my review of DHS databases, and documents contained in the A-file, I learned the following:

    l. QUINTERO was issued a Notice and Order of Expedited Removal on April 16, 2013, in Welton, Arizona by United States Border Patrol, Patrol Agent in Charge Travis Darling. QUINTERO was removed from the United States to Mexico on April 17, 2013.

    m. QUINTERO was issued a Notice and Order of Expedited Removal on May 30, 2013, in Ajo, Arizona by United States Border Patrol Acting Watch Commander David Sikora. QUINTERO was removed from the United States to Mexico on May 31, 2013.

    n. QUINTERO was issued a Notice of Intent/Decision to Reinstate Prior Order on December 16, 2019, by United States Border Patrol Acting Patrol Agent in Charge Joshua Guerrero. QUINTERO was removed from the United States to Mexico on February 27, 2020.

o. QUINTERO was issued a Notice of Intent/Decision to Reinstate Prior Order on January 31, 2022, by United States Border Patrol Acting Parol Agent in Charge Viktoria Garcia. QUINTERO was removed from the United States to Mexico on June 28, 2022.

p. QUINTERO was issued a Notice of Intent/Decision to Reinstate Prior Order on June 7, 2023, by United States Border Patrol Acting Patrol Agent in Charge Scott Schultz. QUINTERO was removed from the United States to Mexico on April 12, 2024.

16. On February 4, 2025, I encountered ENRIQUE at the San Bernardino County West Valley Detention Center located in Rancho Cucamonga, California. ENRIQUE confirmed that his true and correct name was Juan Alonso Hernandez Enrique and his date of birth was October 29, 2000. I conducted preliminary records checks of ICE databases which revealed ENRIQUE was a Mexican National who was previously deported from the United States.

17. On or about February 4, 2025, I reviewed removal documents from Alien File No. A241-900-146 ("A-File"), which was assigned and maintained for ENRIQUE.

18. I reviewed the documents contained within ENRIQUE's A-File. Based on my review of the individual physically depicted in that A-File, and my observations of ENRIQUE in person on February 04, 2025, at the San Bernardino County West Valley Jail, I believe the documents in the A-File correspond to ENRIQUE. Based on my review of DHS databases and documents contained in the A-file, I learned the following:

11

q. ENRIQUE was issued a Notice and Order of Expedited Removal on November 28, 2022, in Yuma, Arizona by United States Border Patrol Supervisor Kurt Schmidt. ENRIQUE was removed from the United States to Mexico on November 28, 2022.

r. ENRIQUE was issued a Notice of Intent/Decision to Reinstate Prior Order on December 25, 2022, by United States Border Patrol Acting Patrol Agent in Charge Dennis Crumby. ENRIQUE was removed from the United States to Mexico on December 25, 2022.

## V. CONCLUSION

19. For the reasons described above, there is probable cause to believe that QUINTERO and ENRIQUE have committed violations of Title 18, United States Code, Section 659: Possession or Receipt of Goods Stolen from Interstate Shipment; Title 18, United States Code, Section 549: Removing Goods from Customs Custody/Breaking seals; and Title 8, United States Code, Sections 1326(a): Illegal Reentry into the United States Following Deportation or Removal.

                                                  /s/
                                       Mitchell Gangwish
                                       Special Agent,
                                       Homeland Security
                                       Investigations

Attested to by the applicant in accordance with the requirements of Federal Rule of Criminal Procedure 4.1 by telephone on this 6th day of February 2025.

*/s/ Alicia G. Rosenberg*
HON. ALICIA G. ROSENBERG
UNITED STATES MAGISTRATE JUDGE

13